UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA L. THOMPSON,

                Plaintiff,           Civil Action No.: 13-14296
                                        Honorable Nancy G. Edmunds
v.                                    Magistrate Judge Elizabeth A. Stafford

FEDERAL EXPRESS,

                Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [R. 32]

Plaintiff Patricia Thompson brings the instant case against defendant Federal Express ("FedEx") alleging race discrimination, retaliation and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*).  FedEx has moved for summary judgment on Thompson's claims.  [R. 32].  For the reasons set forth below, the Court **RECOMMENDS** that FedEx's motion for summary judgment **[R. 32]** be **GRANTED**.

## A.    BACKGROUND

Thompson was terminated pursuant to FedEx's policy to terminate employees who receive three disciplinary letters within any twelve-month period.  [R. 32-6, PgID 344-45].  Thompson has admitted knowing about the "three in twelve" policy, that the first two letters she received were for

chronic untimeliness, and that they were not issued because of her race. [R. 32-3, PgID 228, 230-32]. However, Thompson claims that the third letter, issued after Thompson made threats of violence to another employee in violation of FedEx's conduct policy, was the product of discrimination because she is African-American.

The events leading up to the issuance of the third disciplinary letter are as follows. Thompson alleges that white employee Tiffany Larson "assaulted" her on October 31, 2012, [R. 1, PgID 8], by which she means that Larson intentionally "bumped" into her. [R. 32-3, PgID 206-206; R. 32-6, PgID 366]. Thompson reported the incident to her supervisors and, after a thorough investigation, FedEx concluded that the bump was accidental and that no disciplinary action was warranted. [R. 32-6, PgID 364-68; R. 32-9, PgID 395-97;R. 32-12, PgID 419-426]. Thompson alleges that Larson "assaulted" her in the same manner on November 10, 2012. [R. 1, PgID 8; R. 32-3, PgID 211-12]. This prompted Thompson to tell Larson that, if she bumped into her again, Thompson would "knock [her] head off", and Larson to retort that she wanted Thompson to hit her so she would be fired. The two continued to argue for two minutes. [R. 32-3, PgID 211-12; R. 32-11, PgID 412].

A ramp manager heard the yelling and ran over to find Thompson

2

and Larson "nose to nose." [R. 32-12, PgID 437]. She escorted them to their supervisor, who took their statements and placed both on paid suspension pending an investigation. [R. 32-11, PgID 412; R. 32-12, PgID 430, 433-34, 437]. Later that day, Thompson contacted FedEx's "Alert Line" to complain about the incident, triggering an additional investigation by FedEx's human resources department. [R. 32-12, PgID 431-32].

According to witness accounts and a videotape of the incident, Thompson caused the collision and made threats of physical violence. [R. 32-6, PgID 369; R. 32-12, PgID 420, 435-36]. The human resources managers concluded that the bump did not warrant disciplinary action, but that because both employees had violated FedEx's policy prohibiting disorderly conduct (which includes threats of violence), both were issued disciplinary letters. [R. 32-4, PgID 288-89, 293;R. 32-6, PgID 311; R. 32-9, PgID 405-06]. While this was Larson's first disciplinary letter, it was Thompson's third in twelve months, so she was terminated. [R. 32-6, PgID 370-71;R. 32-11, PgID 412].

Thompson also alleges that she was harassed by white co-worker Donald Plank, who she claimed made false allegations about her to supervisors. [R. 1, PgID 8; R. 32-3, PgID 237-40].

3

**B.   LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Pittman v. Cuyahoga County Dep't of Children & Family Servs., 640 F.3d 716, 723 (6th Cir. 2011).  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009).  A fact is material if it could affect the outcome of the case based on the governing substantive law. Liberty Lobby, 477 U.S. at 248.  A dispute about a material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  Celotex, 477 U.S. at 324; Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 453 (6th Cir. 2001).  The opposing party "may not

4

'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).  Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3).  The Court's function at the summary

judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## C.   ANALYSIS

### 1.   Race Discrimination

Thompson alleges that the issuance of her third disciplinary letter constituted racial discrimination.  In order to prove discrimination, Thompson must show that she: (1) belongs to a protected class; (2) suffered an adverse employment action; (3) was satisfying her employer's legitimate expectations; and (4) was treated differently from similarly-situated non-minority employees for the same or similar conduct.  *Mitchell v Toledo Hosp.*, 964 F.2d 577, 581-83 (6th Cir. 1992).

FedEx concedes that Thompson has satisfied the first two elements of this test: as an African-American, she is a member of a protected class and her termination constituted an adverse employment action.  However, FedEx argues, and the Court agrees, that Thompson has failed to create a genuine issue of material fact either that she was satisfying her employer's expectations or that she was treated differently from other similarly situated non-minorities.

"For purposes of the *prima facie* case analysis, a plaintiff's

6

qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations prior to and independent of the events that led to the adverse action." *Tysinger v. Police Dep't,* 463 F.3d 569, 573 (6th Cir. 2006) *citing Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 585 (6th Cir. 2002). Thompson offers no evidence to support this element. To the contrary, she admits that she received two prior disciplinary letters for violating FedEx's punctuality policy, and concedes that her receipt of those letters had nothing to do with her race. [32-3, PgID 230-32]. There is no dispute that Thompson was amply counseled about problems with punctuality, and had even been given a "Decision Day" – a paid day off to decide whether she wanted to continue as a FedEx employee. [32-6, PgID 347-48, 362-63]. There can be no dispute that Thompson was not satisfying her employer's legitimate expectations prior to her termination.

Additionally, Thompson offered no evidence of the fourth element, namely that similarly-situated non-minorities were treated differently. Whether other employees are similarly situated requires a case by case analysis; while the Court must consider all relevant traits between employees to be compared, it may ignore distinctions that are not meaningful to the analysis. *Jackson v. Fedex Corp. Servs.,* 518 F.3d 388, 393-94 (6th Cir. 2008).

7

FedEx identified two other material handlers with similar jobs to Thompson's, each of whom is white and was terminated after receiving three disciplinary letters in twelve months.  [32-6, PgID 372-80].  One employee was terminated after receiving three punctuality letters, and the other was terminated after receiving two letters for "other behavior" violating FedEx policy, and one letter for disruptive behavior (the policy provision Thompson violated).  [*Id.*].  Although she made an effort at the hearing to argue that those other employees were not similarly situated, her efforts fell well short.

Thompson's principal argument during the hearing was that she should not have received the third disciplinary letter because she was the victim of a pattern of racially-motivated harassment on the part of Larson and that FedEx failed to protect her. To make this argument, Thompson relied heavily on a supplemental affidavit that she filed right before the beginning of the April 16, 2015, hearing; defense counsel did not have a chance to see the affidavit before the hearing started.  [R. 47].  The Court does not consider Thompson's affidavit to be valid evidence because she did not seek leave pursuant to Local Rule 7.1(g) to file it. *See Istvan v. Honda Motor Co.*, 455 F. App'x 568, 574 (6th Cir. 2011) (a motion to file additional evidence is required because "Eastern District of Michigan have

8

construed Rule 7.1(g) to allow themselves discretion in deciding whether to accept supplemental evidence.").

Moreover, even if Thompson's affidavit were considered, its credibility is unsustainable.  She claims in the affidavit that she had reported to her manager that Larson "had attempted and continued to assault me on several instances, and that she was treating me differently than other employees based upon my race." [R. 47, PgID 532].  Contradictorily, every other statement that Thompson made regarding Larson, including an earlier affidavit, described only the two prior encounters described above, and her reports to FedEx prior to the filing of her complaint said nothing about race.  [R. 1, PgID 8; R. 32-3, Pg.ID 204; R. 32-12, PgID 431-32, 434; R. 43-1, PgID 511; R. 43-2, PgID 517].

Finally, Thompson's reliance on the important protections of Title VII to argue that she should be shielded from the consequences of her work-place threat of violence is not well-taken.  The evidence establishes that Thompson was terminated after failing to satisfy FedEx's legitimate expectations, and Title VII cannot save her.

### 2.   Retaliation

Thompson alleges that her termination was in retaliation for her engaging in protected conduct under Title VII, namely filing complaints

against Larson. She identifies her October 31, 2012 complaint and her November 10, 2012 call to the FedEx Alert Line as forming the basis for her retaliation claim. [R. 43, PgID 505]. To prove retaliation, Thompson must establish a *prima facie* case by showing that: (1) she engaged in protected conduct; (2) FedEx knew of her exercise of her rights; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action. *Niswander v. Cincinnati Ins. Co.,* 529 F.3d 714, 720 (6th Cir. 2008); *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009). Here, Thompson cannot make out a *prima facie* case of retaliation.

First, Thompson fails to show that she engaged in protected conduct. Vague reports of retaliation and discrimination are insufficient to constitute protected activity where there is no mention of any protected status. *See Samuels v. Corr. Med. Servs.,* 591 Fed. Appx. 475, 484-85 (6th Cir. 2015) None of Thompson's documented complaints to FedEx ever suggested that she believed Larson was targeting her because of her race. [R. 32-6, PgID 366; R. 32-12, PgID 431-32, 434].

In addition, Thompson fails to show that FedEx would not have terminated her absent her complaints. *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). The Sixth Circuit has held that

10

temporal proximity alone can be enough to establish the causation prong. *Montell v. Diversified Clinical Servs.,* 757 F.3d 497, 505-506 (6th Cir. 2014) (collecting cases). However, emails exchanged between Thompson's supervisors reveal beyond reasonable dispute that FedEx did not intend to take any action against her as a result of the October 31 complaint. [R. 32-6, PgID 364-65].

Additionally, the November 10 argument was witnessed by Ramp Manager Denise Sheppherd. She escorted Thompson and Larson to the management office, a disciplinary investigation was initiated and Thompson was suspended pending the outcome of that investigation prior to her call to the Alert Line regarding the November 10 incident. [R. 32-11, PgID 412; R. 32-12, PgID 430-39]. FedEx's action of "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001).

For these reasons, Thompson cannot establish either that she had engaged in protected conduct or that FedEx retaliated because of her report to the Alert Line.

### 3. Hostile Work Environment

Finally, Thompson alleges that she was subjected to a hostile work

environment due to harassment by Donald Plank.  As a preliminary matter, Thompson abandoned this claim by failing to address it in her response to FedEx's motion for summary judgment.  [R. 43].  "This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."  *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013).

Thompson attempted to revive her hostile work environment claim by filing the unsanctioned supplemental affidavit in violation of Rule 7.1(g).  [R. 47].  Even considering its substance, her claim fails.  In order to establish a *prima facie* case of hostile work environment, Thompson must show that: (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her race; (4) the harassment had the effect of unreasonably interfering with her work performance "by creating intimidating, hostile or offensive work environment"; and (5) FedEx is liable.  *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009).

Here, Thompson fails to demonstrate that she suffered unwelcome harassment from Plank.  The uncontroverted evidence demonstrates that, while Thompson complained to her supervisor that Plank had been making

12

false allegations about her work performance, the ensuing investigation determined that Plank *and* other employees had reported Thompson's performance issues, and concluded that Plank's reports had been legitimate.  [R. 32-6, PgID 351-60;R. 32-8, PgID 390-91].

Further, in Thompson's interview with management during the investigation, she conspicuously omitted race as an explanation for Plank's alleged harassment.  Instead, Thompson stated she did not know why Plank was reporting her; they just did not get along.  [R. 32-6, PgID 352-53].  She does not even allege that Plank's alleged harassment was motivated by race in her belatedly filed affidavit.  [R. 47].

Because Thompson cannot sustain a *prima facie* case, her claim of hostile work environment fails as a matter of law.

## D.      CONCLUSION

The Court finds that Thompson has failed to establish a *prima facie* case of any of her alleged claims.  As a result, the Court **RECOMMENDS** that FedEx's motion for summary judgment **[R. 32]** be **GRANTED**.


Dated: April 22, 2015                    s/Elizabeth A. Stafford
Detroit, Michigan                        ELIZABETH A. STAFFORD
                                         United States Magistrate Judge

### <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

14

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 22, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager